UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ELLEN M. OBRIST,

         Plaintiff,

 -v-             5:11-CV-470

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:         OF COUNSEL:

LEGAL SERVICES OF CENTRAL NEW YORK, INC. CHRISTOPHER CADIN, ESQ.
Attorneys for Plaintiff
472 S. Salina Street, Suite 300
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL  SANDRA M. GROSSFELD, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278


DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

  This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act,

as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the

---

[1] Carolyn W. Colvin ("Colvin) became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Colvin is substituted for Michael J. Astrue as the defendant in this action. The Clerk is directed to change the caption to reflect this change.

Commissioner of Social Security denying the plaintiff's claim for Social Security Disability and Supplemental Security Income benefits. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Ellen M. Obrist ("plaintiff" or "Obrist") filed an application for social security disability benefits on May 4, 2005, claiming a period of disability beginning on March 31, 1992. Her claims were initially denied on August 10, 2005. She requested a hearing on August 31, 2005, and a hearing was held before an Administrative Law Judge ("ALJ") on May 15, 2007. The ALJ rendered a decision on May 22, 2007, denying plaintiff's claim. Plaintiff requested review of the ALJ's decision and submitted, with permission, additional evidence to the Appeals Council. On December 13, 2007, the Appeals Council remanded the matter for a new hearing.

A new hearing was scheduled for June 2, 2009. At the request of the plaintiff, the hearing was adjourned. The hearing was held on September 15, 2009. The ALJ denied Obrist's claims on December 23, 2009. Plaintiff requested review of the ALJ's decision on February 11, 2010. On February 22, 2011, the Appeals Council denied review. Thus, the ALJ's decision became the final decision of the Commissioner.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam)

(citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148. "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available. 42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). A remand for rehearing directing the taking of additional evidence is warranted only if it is

shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)). Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing." Id. at 644. However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

### B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and

- 5 -

previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

### C. Analysis

Obrist asserts three errors warranting reversing the decision denying her benefits. First, she contends that the ALJ failed to properly evaluate the medical evidence, including the treating physicians' opinions. Second, she argues that the ALJ's determination of her RFC was in error. Finally, according to plaintiff the ALJ erroneously discounted her credibility.

#### 1. Medical Evidence Evaluation

The essence of plaintiff's argument is that the ALJ improperly gave substantial weight to non-treating sources, when he should have given more weight to treating sources. Obrist complains that the ALJ gave little weight to treating sources because the ALJ found they were based upon subjective complaints and were "'inconsistent with the objective medical evidence and the longitudinal record of medical care.'" Pl.'s Mem. at 15 (quoting R. at 31).

A treating physician's opinion is given significant weight if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)).  However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight.  Id.  Where the treating physician's opinion is not given controlling weight, the weight it is given is determined by consideration of the following factors:   length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability, especially by medical signs and laboratory findings; consistency with the record as a whole; specialization; and other factors pointed out by the plaintiff.  Id.

In the first instance, medical source opinions which concern issues reserved to the Commissioner (such as that claimant "is disabled" or "cannot work") are not entitled to any weight.  20 C.F.R. § 416.927(d)(1).  Plaintiff's therapist Carol Carlson ("Carlson") opined on March 1, 2005, that plaintiff could not perform any hours of work activity due to her mental health issues.  R. 291.  Similarly, in a Psychiatric Report by Dr. Maltese on September 27, 2005, he opined that Obrist was not capable of any work activity.  Id. at 361–62.  Such opinions as to inability to work are issues reserved to the Commissioner, and, as such, are not entitled to any weight.  See 20 C.F.R. § 416.927(d)(1).

On June 4, 2007, Dr. Maltese noted that Obrist was doing quite well with her medications, they were effective, and she had no side effects.  R. 478.  He reported that her mood was doing well, and she was happy with her medication regimen and wished to continue it.  Id.  Moreover, Progress Notes by Obrist's therapist Lauren McMahon ("McMahon") from December 15, 2006 through September 18, 2007,  indicate that, while she

continued to experience symptoms of depression and mood swings, generally she was making progress on her treatment goals and it was not necessary to modify her treatment plan. Id. at 488–520. On September 12, 2007, McMahon filled out a Medical Source Statement (Mental). Id. at 521–25. Dr. Maltese signed it on September 24, 2007. Id. The statement indicated Obrist had moderate and marked limitations on her abilities to understand, remember and carry out instructions, as well as moderate limitations in her ability to interact appropriately with supervisors, co-workers, and the public and to respond to changes in the routine work setting. Id. at 521–22. The opinions as to plaintiff's limitations set forth on the Medical Source Statement are inconsistent with Dr. Maltese's medication therapy visit note of September 12, 2007, and McMahon's progress treatment notes. Those opinions are also inconsistent with Dr. Maltese's medication therapy visit of November 19, 2007, where he noted that Obrist was doing well with her combination of medications and wished to continue it. Id. at 563. Therefore, because McMahon's and Dr. Maltese's opinions were not supported by medical evidence, the ALJ properly declined to give them significant weight.

Obrist argues that in giving "great weight" to the October 25, 2008, statements of Dr. Charles, the ALJ failed to consider the entire record because he commented only on exhibits F 15, 26, 32, and 33, but did not comment on F 34, 36, and 43. Pl.'s Mem. at 15. The ALJ's comprehensive decision, R. 18–47, clearly reflects his consideration of the entire record.

Plaintiff points to the weight the ALJ gave to the opinions of Dr. Charles, Dr. Walia, Dr. VanOrden, Dr. Shapiro, Dr. Barry, and Dr. Maltese. See Pl.'s Mem. at 14–17. Dr. Charles was a non-examining psychiatric medical expert who evaluated the entire record and completed a Medical Source Statement (Mental) on October 25, 2008, R. 534–41, after

- 8 -

plaintiff's hearing. Dr. Charles's opinions were supported by the medical findings in the record which he reviewed, were consistent with the record as a whole, and his specialty of psychiatry was in line with the requirements of the case.

Dr. Walia, a State agency review psychologist, completed a Psychiatric Review Technique form on August 3, 2005. Id. at 322-35. Although she was a non-examining medical source, her conclusions were consistent with those of Dr. Shapiro, who performed a consultative psychiatric examination on June 17, 2005. Id. 332, 302–07.

Dr. VanOrden was plaintiff's treating psychiatrist, although only for a single medication therapy visit on January 29, 2008. Id. at 561–62. Plaintiff argues that the ALJ should not have given her opinion substantial weight. However, in comparison to Dr. Maltese, whose opinion plaintiff argues should have been given significant weight, Dr. VanOrden saw plaintiff for one 15-minute visit, while Dr. Maltese only saw plaintiff for two 15-minute visits. Thus, the length of the treating relationship is not of significance in determining weight.

Dr. Barry, a consultative psychiatrist, completed a Medical Source Statement (Mental) and Psychiatric Evaluation on October 6, 2008. Id. at 531–33. The ALJ gave some weight to her opinions regarding following instructions and making judgments as they were consistent with the record as a whole. However, he gave no weight to her opinion that Obrist had marked limitations in interacting appropriately with supervisors, co-workers, and the public, and responding to changes in the work setting, as this opinion was inconsistent with the objective medical evidence and the longitudinal record of medical care. Plaintiff failed to point to any other portion of the record which would support Dr. Barry's discounted opinion.

Similarly, Obrist does not argue that any other medical sources should have been given more or less weight than that given by the ALJ. See Pl.'s Mem. at 13–17. Further,

other than conclusory statements as to consistency with the record, plaintiff fails to provide any analysis regarding the length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability, especially by medical signs and laboratory findings; and specialization as to any medical sources, including those discussed above. Nor does she point out other factors that should be considered in the determination of weight given to medical source opinions.

The ALJ gave appropriate weight to the medical sources in the record.

### 2. **RFC Determination**

Plaintiff argues that because the ALJ's assessment of her RFC was inaccurate as to her ability/inability to deal with stress, the hypotheticals presented to the vocational expert provide no bases for the opinion of the vocational expert that jobs exist in the local and national economies that she can do.

According to Obrist, the ALJ's assessment of her limitations in dealing with stress was not consistent with the medical evidence.[2] Obrist takes issue with the ALJ's definition of stress "as occasional interacting 'appropriately' with co-workers and the public 'in groups of five or less' seemingly suggesting a likelihood of other, inappropriate interaction, more than occasionally, with co-workers and the general public." Pl.'s Mem. at 18 (quoting T. 32). A straightforward reading of the ALJ's definition reveals that the focus is on a claimant's limitation to occasional, not frequent, interaction with small groups of individuals, rather than

---

[2] Plaintiff also seems to argue that the ALJ failed to develop the record with regard to her difficulty dealing with stress. However, there was no vague or inconsistent evidence, or gaps in the record, which would have required further development of the record.

on occasional appropriateness of any interaction. This argument does not show that the ALJ's assessment was inconsistent with the medical evidence.

Obrist also argues that the ALJ's second hypothetical in which he defined stress led the vocational expert to respond focusing on the number five (i.e., occasional interaction with groups of five or less). According to plaintiff, the evidence of the record about her having no difficulty with classes of approximately five persons does not translate to her ability to sustain work activity.

The issue with the ALJ's assessment of plaintiff's RFC is whether substantial evidence in the record supports his conclusion. If so, then the hypotheticals posed to the vocational expert reflecting that RFC and the vocational expert's conclusion are valid.

Obrist testified that she could not use public transportation, go to the downtown area, or attend sporting events because of the large number of people. R. 638. She also testified that she only had anxiety when dealing with large numbers of people, but not in smaller groups such as her classes of five or six people. Id. at 601–02, 638. Dr. Walia opined that Obrist had moderate limitations in the ability to interact appropriately with the general public, but no significant limitation to get along with co-workers and maintain socially appropriate behavior. Id. at 336, 338. The Medical Source Statement filled out by therapist McMahon and signed by Dr. Maltese reflected that plaintiff had moderate limitations interacting appropriately with the public, supervisors, and co-workers, where moderate was defined as more than a slight limitation but the individual retains the ability to function satisfactorily. Id. at 521–22. The above constitutes substantial evidence in support of the ALJ's RFC assessment that Obrist "can work in a low-stress environment, which is defined as only

occasional decision making and occasional interacting appropriately with the co-workers and the public in small groups of five or less." Id. at 32.

### 3. **Credibility Determination**

Obrist argues that the ALJ erred in finding her less than credible as to the extent that her symptoms limit her ability perform substantial gainful activity.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms. However, he found that the alleged extent of her symptoms was inconsistent with her other testimony and the other evidence in the record. For example, she alleged that her mental impairments severely limited her activities of daily living. However, she testified that she dresses herself, bathes, grooms herself, takes care of her dog, cooks, prepares food, cleans, does laundry, reads, knits, and many other activities. She also testified that she becomes overwhelmed and does not like to leave her house. Yet she testified to biking, hiking, taking college classes, attending a concert, camping, going to the gym, and traveling out of town.

In addition to the internal inconsistencies in Obrist's testimony, the ALJ pointed to other evidence undermining her credibility. For example, she attended GED classes, was at the top of her class, and successfully obtained her GED. She has a very poor work history. Despite her claim of disability, she admitted in April 2009 that she was working one day a week. Moreover, Obrist was repeatedly engaged in criminal activity and has been in jail numerous times. She has a twenty-plus year history of alcohol and drug abuse, including cocaine, heroin, marijuana, and others, despite multiple rehabilitation efforts. Even after successfully completing rehabilitation, she has occasionally suffered relapses. In October 2008 she admitted to using marijuana daily for the last six months. Id. at 584–85. In April

2009, Obrist admitted ongoing daily marijuana use to Dr. Kang. Id. at 573–74. The ALJ also pointed to thirty-eight treatment notes indicating that plaintiff's symptoms had improved or were good.

Additionally, the ALJ noted that his determination as to plaintiff's credibility regarding the severity of her symptoms "does not mean that she has no symptoms." Id. at 39. Rather, this finding means only that she did not produce evidence that substantiated her allegations of symptoms and the extent to which those symptoms limited her ability to do work. See id. As noted by the ALJ, absent substantiating evidence of such limitations, Obrist's subjective complaints cannot be given controlling weight. Id. (citing SSR 96-4p).

The ALJ did not err in assessing plaintiff's credibility.

## IV. **CONCLUSION**

The ALJ properly weighed the medical evidence including Obrist's treating physicians. Substantial evidence supported the ALJ's determination of plaintiff's RFC, so the vocational expert's opinion based on that RFC was proper. Finally, the ALJ followed the proper legal standard in assessing plaintiff's credibility as to the extent of her alleged symptoms.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 3, 2013
 Utica, New York.